UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WEIGUO SUN, LINDA HE CHEUNG, JIA LI WANG, JIAMEI LU, JUN LIU, MAO-FU WENG, RUQIN WANG, TELI CHEN, WEIXIANG GE, SHUANG WANG, XINGYU YAN, YAN GAO, YI LI, AND YING LIU, | Civil Action No.: 1:21-cv-04529 |
| Plaintiffs, | |
| v. | COMPLAINT |
| GTV MEDIA GROUP INC., SARACA MEDIA GROUP INC., WENGUI GUO (a/k/a HO WAN KWOK), VOICE OF GUO MEDIA, INC., AND LIHONG WEI LAFRENZ (a/k/a "SARA", a/k/a LIHONG WEI) | |
| Defendants. | |

Plaintiffs Weiguo Sun, Linda He Cheung, Jia Li Wang, Jiamei Lu, Jun Liu, Mao-Fu Weng,

RuQin Wang, Teli Chen, Weixiang Ge, Shuang Wang, Xingyu Yan, Yan Gao, Yi Li, and Ying

Liu, by and through their undersigned counsel, allege the following against Defendants GTV

Media Group Inc. ("GTV"), Saraca Media Group Inc. ("Saraca"), Wengui Guo ("Guo"), Voice of

Guo Media, Inc. ("VOG"), and Lihong Wei Lafrenz (a/k/a Sara) ("Lafrenz").

## NATURE OF THE ACTION

1.      Defendants contrived and conspired to sell the unregistered securities of Defendant

GTV to Plaintiffs, through untrue and materially misleading statements that Defendants broadcast

to the public-at-large in video and audio messages posted on YouTube, Discord, and other media

and social media platforms, in violation of the Securities Act of 1933 (the "Securities Act") and

the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Defendants Guo and Saraca, an entity that Guo controlled, initiated the fraudulent and unlawful scheme by posting videos of Guo on YouTube and Saraca's website "GNews," and later on GTV's social media app, in which Guo made materially false and misleading statements concerning the value of GTV's business, the value of GTV's securities, the success and status of GTV's social media app, and the value and status of a purported cryptocurrency "G-Coin."

3.     Plaintiffs viewed these videos at or around the time of their initial posting and, as Guo and Saraca intended, relied on Guo and Saraca's representations about GTV and sought information about how they could invest.

4.     Defendants then initiated the next step in their scheme whereby Defendant Guo authorized Defendants Lafrenz and VOG, an entity controlled by Lafrenz, to collect funds from Plaintiffs to invest in GTV securities on Plaintiffs' behalf. Defendants Guo and Lafrenz posted statements on YouTube, GTV's social media app, or Discord in which they stated that Plaintiffs' funds, once received by Lafrenz and VOG, would be used to purchase GTV securities that would then be delivered to Plaintiffs.

5.     In reliance on these statements, Plaintiffs sent funds to Defendants Lafrenz and VOG at bank accounts Lafrenz controlled.  Contrary to Defendants' representations, however, no GTV securities were purchased with Plaintiffs' funds and no GTV securities were delivered to Plaintiffs. Rather, Defendants kept Plaintiffs' funds and provided nothing of value in return.

6.     Defendants furthered the scheme by misleading Plaintiffs to believe the investment would occur, that refunds would be issued, or that Plaintiffs' investments would be converted into another opportunity to invest with either GTV or another of Guo's ventures.  Plaintiffs were lulled into a sense of security by these representations and refrained from taking action for months while,

in secret, Defendants transferred Plaintiffs' funds out of GTV and, upon information and belief, out of the country.

7.      Plaintiffs pressed Defendants, particularly Defendant Lafrenz, to reveal the truth and return their money to them. Neither Lafrenz, nor any other Defendant, has returned any funds to Plaintiffs.

8.      As a result of the sale of the unregistered securities, Defendants' false and misleading statements, and Defendants' failure to deliver any securities or refunds to Plaintiffs, Defendants have violated the Securities Act, the Exchange Act, defrauded Plaintiffs, and have been unjustly enriched at Plaintiffs' expense.

## THE PARTIES

9.      Plaintiff Weiguo Sun is an individual and resident of Norway who transferred $59,200 on May 18, 2020, to Defendant Lafrenz at a Wells Fargo bank account in the name of Defendant VOG pursuant to an agency agreement by which Lafrenz was to invest that sum in Defendant GTV. Plaintiff Weiguo Sun never received any GTV securities.

10.     Plaintiff Linda He Cheung is an individual and resident of the state of California who transferred $50,030 on May 18, 2020, to Defendant Lafrenz at a Wells Fargo bank account in the name of Defendant VOG pursuant to an agency agreement by which Lafrenz was to invest that sum in Defendant GTV. Plaintiff Linda He Cheung never received any GTV securities.

11.     Plaintiff Jia Li Wang is an individual and resident of New York who transferred $430,000 on May 18, 2020, to Defendant Lafrenz at a Wells Fargo bank account in the name of Defendant VOG pursuant to an agency agreement by which Lafrenz was to invest that sum in Defendant GTV. Plaintiff Jia Li Wang never received any GTV securities.

12.     Plaintiff Jiamei Lu is an individual and resident of Hawaii who transferred $15,000 on April 27, 2020 and an additional $25,000 on May 11, 2020, to Defendant Lafrenz at a Wells Fargo bank account in the name of Defendant VOG pursuant to an agency agreement by which Lafrenz was to invest the total sum of $40,000 in Defendant GTV. Plaintiff Jiamei Lu never received any GTV securities.

13.     Plaintiff Jun Liu is an individual and resident of Japan who transferred $35,000 on May 14, 2020, to Defendant Lafrenz at a Wells Fargo bank account in Lafrenz's name pursuant to an agency agreement by which Lafrenz was to invest that sum in Defendant GTV. Plaintiff Jun Liu never received any GTV securities.

14.     Plaintiff Mao-Fu Weng is an individual and resident of Taiwan who transferred $45,000 on May 20, 2020, to Defendant Lafrenz at a Wells Fargo bank account in Lafrenz's name pursuant to an agency agreement by which Lafrenz was to invest that sum in Defendant GTV. Plaintiff Mao-Fu Wang never received any GTV securities.

15.     Plaintiff RuQin Wang is an individual and resident of Canada who transferred $89,980 on May 14, 2020, to Defendant Lafrenz at a Wells Fargo bank account in the name of Defendant VOG pursuant to an agency agreement by which Lafrenz was to invest that sum in Defendant GTV. Plaintiff RuQin Wang never received any GTV securities.

16.     Plaintiff Teli Chen is an individual and resident of the state of Washington who transferred $125,000 on May 27, 2020, to Defendant Lafrenz at a Bank of America bank account in the name of Defendant VOG pursuant to an agency agreement by which Lafrenz was to invest that sum in Defendant GTV. Plaintiff Teli Chen never received any GTV securities.

17.     Plaintiff Weixiang Ge is an individual and resident of the state of Texas who transferred $4,500 on May 15, 2020, to Defendant Lafrenz at a Wells Fargo bank account in the

name of Defendant VOG pursuant to an agency agreement by which Lafrenz was to invest that sum in Defendant GTV. Plaintiff Weixiang Ge never received any GTV securities

18.     Plaintiff Shuang Wang is an individual and resident of the state of Texas who transferred a total of $25,500 between May 12 to 15, 2020, to Defendant Lafrenz at a Wells Fargo bank account in the name of Defendant VOG pursuant to an agency agreement by which Lafrenz was to invest that sum in Defendant GTV. Plaintiff Shuang Wang never received any GTV securities.

19.     Plaintiff Xingyu Yan is an individual and resident of China who transferred $100,000 on May 8, 2020, to Defendant Lafrenz at a Wells Fargo bank account in the name of Defendant VOG pursuant to an agency agreement by which Lafrenz was to invest that sum in Defendant GTV. Plaintiff Xingyu Yan never received any GTV securities.

20.     Plaintiff Yan Gao is an individual and resident of the state of Oregon who transferred $66,000 on May 18, 2020, to Defendant Lafrenz at a Wells Fargo bank account in the name of Defendant VOG pursuant to an agency agreement by which Lafrenz was to invest that sum in Defendant GTV. Plaintiff Yan Gao never received any GTV securities.

21.     Plaintiff Yi Li is an individual and resident of China who transferred $45,000 on May 13, 2020, to Defendant Lafrenz at a Wells Fargo bank account in the name of Defendant VOG pursuant to an agency agreement by which Lafrenz was to invest that sum in Defendant GTV. Plaintiff Yi Li never received any GTV securities.

22.     Plaintiff Ying Liu is an individual and resident of the state of California who transferred $20,000 on May 28, 2020, to Defendant Lafrenz at a Bank of America bank account in the name of Defendant VOG pursuant to an agency agreement by which Lafrenz was to invest that sum in Defendant GTV. Plaintiff Ying Liu never received any GTV securities.

23.     Upon information and belief, including records maintained by the New York State Department of State, Defendant GTV Media Group Inc. is a Delaware corporation with its principal place of business located at 162 East 64th Street, New York, New York 10065.

24.     Upon information and belief, including records maintained by the New York State Department of State, Defendant Saraca Media Group Inc. is a Delaware corporation with is principal place of business located at 162 East 64th Street, New York, New York 10065.

25.     Upon information and belief, Defendant Saraca is the parent company of Defendant GTV. Saraca owns and operates an online media website "GNews," and a company called "Guo Media" through which it publishes statements from or about Defendant Guo and his ventures. Saraca also owns trademarks that feature Defendant Guo's names and aliases, including "Guo Wengui" and "Miles Guo."

26.     Upon information and belief, Defendant Wengui Guo, also known as Ho Wan Kwok, Miles Guo and/or Miles Kwok, is and at all times referred to herein was an individual and foreign national residing in the State of New York.

27.     Upon information and belief, Defendant Guo holds, controls, or otherwise has a beneficial interest in Defendants Saraca and GTV. Guo's close associate Yanping Wang is identified as Saraca's CEO in the New York State Department of State's records and Guo's personal assistant Chunguang Han is identified as Saraca's President and board member in a March 2019 Delaware state tax filing.

28.     Upon information and belief, including the records of the Arizona Secretary of State, Defendant Voice of Guo Media, Inc. is an Arizona corporation with its principal place of business located in Arizona.

29.     Upon information and belief, including bank wire instructions, Defendant Lihong Wei Lafrenz, also known as "Sara," is an individual and resident of Arizona who is an associate and accomplice of Defendant Guo. Defendant Guo expressly authorized Lafrenz to collect money from Plaintiffs as part of Defendants' fraudulent scheme.

30.     Upon information and belief, including bank account information, wire instructions, and records maintained by the Arizona Secretary of State, Defendant Lafrenz owns and controls Defendant VOG, including its bank accounts and business operations. Defendant Lafrenz is the statutory agent for VOG, as well as its President and sole director.

## JURISDICTION AND VENUE

31.     The claims asserted herein are based on Sections 5, 12, and 15 of the Securities Act (15 U.S.C. §§ 77e, 77l, and 77o). As such, this Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and over the remaining claims arising under New York law pursuant to 28 U.S.C. § 1367.

32.     This Court has personal jurisdiction over Defendants GTV, Saraca, and Guo pursuant to New York Civil Practice Law and Rules 301 and 302(a) because each Defendant resides in and/or is found within the State of New York, each Defendant regularly transacted business within the state, and each Defendant committed a tortious act within the state.

33.     This Court has personal jurisdiction over Defendants VOG and Lafrenz pursuant to New York Civil Practice Law and Rules 301 and 302(a) because each Defendant regularly transacted business within the state and each Defendant committed a tortious act within the state.

34.     Personal jurisdiction is also proper over all Defendants because each Defendant, individually and in concert, purposefully availed itself or himself or herself of the privilege of conducting business activities within the State of New York.

35.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to Plaintiffs claims occurred in this district, and because Defendants are subject to personal jurisdiction within this district.

## SUBSTANTIVE ALLEGATIONS

### The GTV Solicitations and Offering

36.     GTV is the brainchild of Defendant Guo, a self-described political dissident from China with a large social media following in the U.S., including Plaintiffs who were familiar with Guo from videos he posted on YouTube.

37.     Guo conceived GTV to be a video streaming social media platform for user-generated political content.

38.     Over the course of 2019 and early 2020, Defendants Guo, Saraca, and GTV developed GTV's video broadcast platform and website (the "GTV Platform").

39.     By March 2020, Defendants had developed an initial release version of the GTV Platform.

40.     Several of Plaintiffs, including Plaintiff Jiamei Lu, Jia Li Wang, Jun Liu, Mao-Fu Weng, and Weiguo Sun, learned of the GTV Platform from Defendant Guo's internet posts and videos, and thereafter viewed content on the GTV Platform.

41.     In connection with the March 2020 release of the GTV Platform, Defendant Guo began broadly soliciting investors to invest in GTV. These solicitations were made through YouTube, the GTV Platform, "GNews" (a website owned and operated by Saraca and under Guo's control), as well as other public social media platforms.

42.     Defendant Guo himself and through various agents, boasted about the opportunity to invest in GTV, stating that substantial gains would be achieved and that GTV would replace

major social media platforms. These boasts were posted publicly on the internet, including on YouTube.

43.     For example, on April 7, 2020, Guo boasted in a livestream broadcast online to the public, that there were so many people who wanted to invest in GTV that "one or two or three billion dollars could be raised in one minute" and that GTV stock would rise by as much as "10 times."

44.     Plaintiffs, including Jun Liu, Mao-Fu Weng, Weiguo Sun, Teli Chen, Shuang Wang, and Xingyu Yan, viewed Defendant Guo's April 7 broadcast and were interested in the opportunity to invest in GTV.

45.     On April 9, 2020, Guo posted a video to YouTube in which he similarly touted GTV as an investment. This video has since been removed by YouTube for violating its community guidelines.  Several of Plaintiffs viewed this video.

46.     At or around the time these videos were released, Defendant Guo enlisted Defendant Lafrenz to solicit investments from individuals who had supported Guo's political activism against the Chinese Communist Party in a campaign known as the "Whistleblower Movement" through donations to a so-called "Rule of Law Foundation."

47.     On April 13, 2020, Lafrenz sent messages via Discord, a social media messaging platform, to individuals that supported the Whistleblower Movement, including Plaintiff Xingyu Yan.

48.     In the April 13, 2020 message, Lafrenz instructed Plaintiff Xingyu Yan to send certain information to an email address "gtvstock@gmail.com." Xingyu Yan sent the requested information the same day and, on April 14, 2020, received a response including Defendant Guo's purported WhatsApp messenger phone number that indicated Guo would "communicate with you

directly about GTV's private placement," and that any message sent to Guo should state "I am recommended by Sara, I am XXX, I want to invest US$XXX." "Sara" is an alias used by Defendant Lafrenz on Discord and other platforms.

49.     Plaintiff Xingyu Yan messaged Defendant Guo as Lafrenz instructed and, on April 17, 2020, Xingyu Yan received a response from Guo.

50.     In the response, Guo explained that a minimum investment of $100,000 was required and proof of a donation to the Rule of Law Foundation was a prerequisite to participation. Xingyu Yan provided the requested proof of a donation.

51.     On April 17, 2020, Guo incorporated GTV in Delaware.

52.     On April 20, 2020, Guo created another video in which he provided instructions to potential GTV investors. Although the video purported to be limited to private investors and not the public at large, the video was uploaded to YouTube by Guo the following day without restrictions on who could access and view it.

53.     The April 20, 2020 video included instructions for the investment process. Along with the video, Guo posted a link to download investment documents. Among the instructions, the video instructs investors to contact Guo directly via WhatsApp messenger or iMessage and provided Guo's phone number.  The phone number shown in the video matches the phone number that Plaintiff Xingyu Yan used to contact Defendant Guo.

54.     Plaintiff Jia Li Wang attempted to contact Guo via WhatsApp in response to this solicitation, but Guo did not respond.

55.     On April 21, 2020, Defendant Guo sent a message to Plaintiff Xingyu Yan via WhatsApp and provided a link to download the GTV investment documents referenced in the April 20, 2020 video.

56. Xingyu Yan reviewed the investment documents which included an Information Memorandum, Investment Procedure Guidelines, a subscription agreement, and a non-disclosure agreement. These documents referred to Defendant Guo as GTV's "sponsor" and "consultant" as well as a "main host" on GTV.

57. The Information Memorandum claimed that GTV was the "first ever platform which will combine the power of **citizen journalism** and **social news** with state-of-the-art technology, big data, artificial intelligence, block-chain technology and real-time interactive communication" (emphasis in original).

58. According to the Information Memorandum, under the GTV Offering, GTV would issue between 20 million and 200 million new shares to be sold to investors at a price of US $1.00 per share. Assuming all 200 million shares were subscribed and sold, investors would own 10% of GTV, while Defendant Saraca would own the remaining 90% of GTV. This implied a market capitalization of $2 billion.

59. The Information Memorandum stated that the investments being offered were securities but they would be "offered without registration under the Securities Act of 1933 [ ] in reliance upon certain exemptions therefrom and investors will be required to evidence their compliance with certain requirements."

60. Based on his review of the investment materials, Plaintiff Xingyu Yan was concerned he would be unable to participate in the GTV Offering at that time because he was not an "accredited investor." However, because he had heard from Defendant Lafrenz on Discord that other investment opportunities would be available, he continued to follow Guo's videos and participated in discussions on Discord about investing in GTV.

61.     Prior to and after the April 20, 2020 video, Guo touted the GTV investment in numerous other recorded videos that were broadly made available to the public, including on YouTube and other social media platforms. In these videos, Guo also described a GTV-based cryptocurrency "G-Coin," which investors in GTV would purportedly receive and which, according to Guo, would become highly valuable. These representations were incomplete and/or misleading, and included:

    a.  On April 15, 2020, Defendants Guo, Saraca, and GTV launched the GTV app on Apple's app store. The same day, Guo posted a statement on the GTV Platform stating that the GTV app ranked higher on the Apple app store than WeChat, one of the most popular social media apps in China.

    b.  On April 27, 2020, Guo claimed in a video that G-Coin had already appreciated significantly in value and would have the same status as sovereign currency. There is no indication, however, that G-Coin had any value at this time or that it was accepted as a currency.

    c.  On May 9, 2020, during a livestream in which Guo was joined by an individual identified as "Caogenxiaoge," Guo stated that GTV's valuation would increase by 20 times, but failed to state GTV's current valuation or provide any basis for this representation.

    d.  On May 11, 2020, a livestream in which Guo stated that GTV is "the only safe choice" for investors and that its value could increase by a "thousand, ten thousand, or a hundred thousand times," or "even a million times," adding a promise that investors' money would be "safe" in his hands.

e.  On May 13, 2020, GNews, a website owned by Saraca and thus subject to Guo's control, published an article stating, in Chinese, that "The current financing stage of GTV is the earliest stage and the stage with the highest return. The investment risk corresponding to this stage is of course the largest theoretically, but the GTV fundraisers is **actually a risk-free act** of giving money [to investors]"and concluding that "there is **no business risk**, you just have to believe in it" (emphasis added).

62.    Defendant Guo also touted opportunities for individuals who wished to invest less than $100,000 to invest through alternative means, including through investing indirectly in GTV by sending funds to Lafrenz and VOG, who would, in turn, obtain GTV securities for investors.

63.    As set forth below, Plaintiffs relied on Defendants Guo, Saraca, and Lafrenz's statements and sent funds to Lafrenz or VOG to obtain GTV securities.

### Defendants Invite Smaller Investors to Invest Through Lafrenz and VOG

64.    In order to attract more investors, Defendants Guo, Saraca, VOG, and Lafrenz, upon information and belief, developed a scheme by which they would obtain funds by soliciting smaller investors to pool their funds into Defendant VOG, controlled by Lafrenz, and VOG would then invest in GTV on the investors' behalf (the "Crowdfunding Scheme").

65.    Upon information and belief, Defendants developed this scheme in part because, in or about mid-May 2020, certain of Saraca's bank accounts, including a JP Morgan Chase account, were marked for suspicious activity and blocked from receiving further investor funds. As a result, Defendant Guo and Saraca needed to obtain funds using other bank accounts and entities to avoid further suspicion from their banks.

66.     At or about the same time, Defendants also revealed their Crowdfunding Scheme through a series of livestreams and Discord messages disseminated to the public.

67.     The Crowdfunding Scheme had previously been suggested by Guo during an April 2020 livestream. During that livestream, Guo identified Lafrenz, referred to as "Sara," as an associate he had authorized to accept investments from investors with less than $100,000 through VOG.

68.     Plaintiffs viewed this livestream and Guo's statements at or around the time they appeared online, which conveyed that Lafrenz and VOG were acting in concert with and as agents for Defendants Guo and GTV.

69.     Lafrenz encouraged smaller investors to consider this option, including through discussions on Discord and livestreams. Several of Plaintiffs, including Linda Cheung, Xingyu Yan, Shuang Wang, Weixiang Ge, Jiamei Lu, Teli Chen, Weiguo Sun, and Yi Li, participated in and/or viewed Lafrenz's discussions and livestreams.

70.     For example, on April 16, 2020, Lafrenz promoted the GTV investment opportunity to her Discord followers, including Plaintiff Teli Chen, inviting them to "privately contact me for [a] consultation" and stating that the private placement was to be "conducted by fund managers through private negotiations with investors," including herself.

71.     On May 10, 2020, Lafrenz published a message on Discord instructing interested investors to join a Discord video-chat. During that video-chat, Lafrenz told the viewers that if they sent her records proving their donation to the Rule of Law Foundation, she would send them investment materials.

72.     The same day, Defendant Guo posted a video in which he acknowledged Lafrenz and VOG's role as agents to facilitate investments in GTV and promised to grant Lafrenz and VOG a total of 500,000 GTV shares for themselves.

73.     On May 12, 2020, Lafrenz made another broadcast on GTV, viewed by at least Plaintiffs Weiguo Sun and Yi Li. In that video, Lafrenz explained her and VOG's role as agents authorized by Guo to collect and pool investments for GTV. She again instructed viewers that, if they sent her proof of their support for the Rule of Law Foundation, she would provide them with investment materials for GTV.

74.     According to WhatsApp messages that Lafrenz later posted on the internet, she and Guo also privately discussed her and VOG's role in collecting funds from investors to obtain GTV securities their behalf.

75.     Specifically, on May 15, 2020, Lafrenz sent WhatsApp messages to Guo in which she stated that "as long as the investor provides their donation certificates of ROL foundation and the experience of supporting Guo, I will give him/her YES." Guo responded with a voice message that, upon information and belief, approved of Lafrenz's strategy to collect investors' funds.

76.     The following day, Lafrenz informed Guo that she "just came back from the bank. I sent two checks totaling US$30,000,000," and that there were "Massive investors come [sic] for investment." Guo again replied with voice messages that, upon information and belief, approved of Lafrenz's actions.

77.     On May 18, 2020, Defendant Lafrenz posted a message on Discord inviting investors to send funds to her, stating "Everyone can continue to try to send money … I will update bank information" and that "on May 25th, New York time, registration for investment was [sic] officially stopped."

78.     On May 21, 2020, Defendant Guo posted a video online in which he confirmed Lafrenz's role claim, describing Lafrenz and VOG as a "legal agent" of GTV. This video has since been removed.

**Plaintiffs Rely on Defendants and Invest Their Funds Through the Crowdfunding Scheme**

79.     In reliance on Guo's and Lafrenz's representations that Lafrenz and VOG would collect investors' funds and invest in GTV on investors' behalf, Plaintiffs directly contacted Lafrenz to obtain investment materials:

a.  On April 24, 2020, Plaintiff Jiamei Lu contacted Lafrenz on Discord and received a response from Lafrenz providing investment instructions and a link to bank wiring instructions and a "Limited Agency Agreement."

b.  On May 5, 2020, Plaintiff Xingyu Yan contacted Lafrenz on Discord and received a response from Lafrenz providing investment instructions and a link to bank wiring instructions and a "Limited Agency Agreement."

c.  On May 7, 2020, Plaintiff Jun Liu contacted Lafrenz on Discord and received a response from Lafrenz providing investment instructions and a link to bank wiring instructions and a "Limited Agency Agreement."

d.  On May 10, 2020, Plaintiffs Weixiang Ge and Shuang Wang contacted Lafrenz on Discord and received responses from Lafrenz providing investment instructions and a link to bank wiring instructions and a "Limited Agency Agreement."

e.  On May 12, 2020, Plaintiff Linda Cheung contacted Lafrenz on Discord and received a response from Lafrenz providing investment instructions and a link to bank wiring instructions and a "Limited Agency Agreement."

f.   On May 13, 2020, Plaintiffs Yan Gao, Yi Li, and RuQin Wang contacted Lafrenz on Discord, email, and WhatsApp, respectively, and received responses from Lafrenz providing investment instructions and a link to bank wiring instructions and a "Limited Agency Agreement."

g.   On May 15, 2020, Plaintiffs Jia Li Wang and Ying Liu contacted Lafrenz on Discord and received responses from Lafrenz providing investment instructions and a link to bank wiring instructions and a "Limited Agency Agreement."

h.   On May 16, 2020, Plaintiffs Weiguo Sun and Mao-Fu Weng contacted Lafrenz on Discord and received responses from Lafrenz providing investment instructions and a link to bank wiring instructions and a "Limited Agency Agreement."

i.   On May 20, 2020, Plaintiff Teli Chen contacted Lafrenz on Discord and received a response from Lafrenz providing investment instructions and a link to bank wiring instructions and a "Limited Agency Agreement."

80.   Lafrenz provided all Plaintiffs with substantially the same investment instructions, in Mandarin, which provided that investors should click on a link to download "files and bank account information," fill in the amount of their investment, sign the documents, including the Limited Agency Agreement, provide a copy of a passport or other identity card, and attach a screenshot of the wire transfer record.

81.   The Limited Agency Agreement is uniform and states:

"[Investor], hereby intending to be legally bound, and in consideration of One Dollar ($1.00), and other good, valuable and sufficient considerations, the receipt and adequacy whereof being hereby acknowledged by the Agent and for the benefit of the Investor and his/her successors and assigns, does hereby assign, direct, and designated Lihong Wei Lafrenz (hereinafter referred to as the "Agent"), her successors, assigns, and affiliates, to purchase

on my behalf ,with funds to be provided by me in the sum of $_____, certain shares in GTV Media Group, Inc."

82.     The Limited Agency Agreement identifies Lafrenz's email address as "vog202064@gmail.com" and lists her address as 1850 W Orange Grove Rd., Tucson, AZ 85704. This is the same address Defendant VOG identified as its principal place of business in corporate records filed with the Arizona Secretary of State.

83.     The investment materials that Lafrenz sent to Plaintiffs also included bank wiring instructions for accounts in the name of VOG or Lafrenz's personal account. Specifically, Lafrenz provided wire instructions for three accounts:

> a.   VOG account at Wells Fargo with account number ending 5536;
>
> b.   VOG account at Bank of America with account number ending 7226; and
>
> c.   Lihong Wei account at Wells Fargo with account number ending 1005.

84.     Each of Plaintiffs signed the Limited Agency Agreement and sent the signed copy to Lafrenz.

85.     Lafrenz did not respond to Plaintiffs and did not return a counter-signed copy of the Limited Agency Agreement, except Plaintiff Jun Liu.

86.     On May 11, 2020, Plaintiff Jun Liu attempted to wire funds to Lafrenz following the instructions in Lafrenz's discord message, but Jun Liu's bank refused to execute the transfer. As a result, Jun Liu contacted Lafrenz later that day and Lafrenz immediately sent back a counter-signed copy of the Limited Agency Agreement, with Lafrenz's signature dated May 6, 2020.

87.     Each of Plaintiffs wired funds to the bank account designated by Lafrenz in the investment instructions:

a. Plaintiffs Linda Cheung, Weiguo Sun, Jia Li Wang, Jiamei Lu, RuQin Wang, Weixiang Ge, Shuang Wang, Xingyu Yan, Yan Gao, and Yi Li wired funds into the Wells Fargo account ending 5536 in the name of VOG;

b. Plaintiffs Teli Chen and Ying Liu wired funds into the Bank of America account ending 7226 in the name of VOG; and

c. Plaintiffs Jun Liu and Mao-Fu Weng wired funds into the Wells Fargo account ending 1005 in the name of Lihong Wei.

88.     Plaintiffs wired their funds in reliance on Defendant Guo's representations and statements concerning the quality of the GTV investment, including the investment was "safe," that the value would increase by ten times or twenty times, that GTV's valuation would be worth billions of dollars, that the associated G-Coin would have the status of sovereign currency, that GTV would replace major social media platforms like Tik Tok and YouTube, and that the GTV app out-ranked WeChat in the Apple app store on April 15, 2020 (*see supra*, ¶¶ 43, 45, 61, 72, 78).

89.     Plaintiffs wired their funds in reliance on representations and statements that Defendant Saraca published on its GNews website, including the representation that "there is no business risk" associated with the investment (*see supra*, ¶ 61).

90.     Plaintiffs wired their funds in reliance on representations and statements made by Defendants Lafrenz and VOG, including statements touting the quality of the GTV investment, representations that they were working with Defendants Guo and GTV to enable investors to invest in GTV, and that they would remit funds received from investors to GTV in exchange for GTV shares (*see supra*, ¶¶ 70-71, 73, 77, 79-80).

91.     As a result of the Crowdfunding Scheme, Plaintiffs transferred funds to Defendants Lafrenz and VOG, but Defendants did not deliver the GTV securities they had promised.

**Defendants Obscure the Status of the VOG Funds**

92.    Plaintiffs each sent Lafrenz an email attaching wire transfer records demonstrating the funds transfers to the bank accounts Lafrenz designated.

93.    Although Lafrenz had promised in her Discord messages and other communications to provide Plaintiffs with a receipt for their investment within a few days, Lafrenz never sent any confirmation and none of the Plaintiffs received any receipt evidencing their investment.

94.    Instead, on June 1, 2020, Lafrenz posted an announcement that she and VOG were responding to approximately 8,000 emails, apparently for investments in GTV, and sending counter-signed Limited Agency Agreements back to investors. Plaintiffs, other than Jun Liu, did not receive any response email or counter-signed agreement.

95.    The following day, Defendant Guo announced in a video posted on the GTV Platform that the GTV Offering had closed. During that announcement, Guo explained that GTV had raised "more than 350 million US dollars" but that this did not include approximately $117 million that VOG collected. Guo claimed that, with VOG added in, GTV raised "nearly $500 million US dollars" and that GTV "according to my conservative estimate, it's already worth 17.5 times [the] initial value."

96.    Defendant Guo provided no evidence other than his own assertions for this valuation, nor did he explain why the funds that were pooled into VOG were being separately maintained.

97.    On the same day, Defendant Guo also stated that "[l]ater, we would complete VOG's investment with $117 million US dollars."  He did not indicate when this would happen but made clear that the VOG funds had not been transferred to GTV.

98.     Defendant Guo's June 2, 2020 statement that the money collected by Lafrenz in VOG had not been transferred to GTV but would be invested later, however, was false and Defendants Guo, GTV, Saraca, Lafrenz and VOG knew it to be false.

99.     In fact, letters that Lafrenz sent to the SEC on August 7 and 14, 2020 attaching certain bank records, which she published on Discord and elsewhere in January 2021, reveal that at least $30 million collected by VOG had already been sent to GTV and/or Saraca by check dated May 15, 2020. This fact is further corroborated by a May 16, 2020 WhatsApp message between Guo and Lafrenz, which Lafrenz subsequently posted online, in which she stated that she had sent two checks totaling $30 million to GTV and/or Saraca (*see supra*, ¶ 76).

100.     Upon information and belief, the May 15, 2020 transfer included funds invested by Plaintiffs Jiamei Lu, Jun Liu, RuQin Wang, Weixiang Ge, Shuang Wang, Xingyu Yan, and Yi Li.

101.     Defendant Guo's June 2, 2020 statement also contradicted earlier representations concerning the Crowdfunding Scheme made by himself and Lafrenz.

   a. For example, prior to Plaintiffs' investment, Defendants omitted the material fact and failed to disclose to Plaintiffs that their investment through VOG would be held in VOG and not remitted to GTV in exchange for GTV securities.

   b. Defendant Guo represented in his April 20, May 10, and May 21, 2020 videos, that the investments in GTV that he was promoting would close by the end of May 2020, including investments in GTV through VOG, and that investors would receive their securities thereafter.

   c. Defendant Lafrenz represented in statements on Discord and the GTV Platform, including on April 16, May 10, and May 12, 2020, as well as in the Limited Agency

Agreements provided to Plaintiffs, that the investment closed by May 25, 2020 and Plaintiffs' funds would be used to purchase GTV securities.

102.    Plaintiffs viewed Guo's June 2, 2020 videos and, in reliance on his representations that their funds were still held by VOG but would be invested in GTV, refrained from taking any steps to obtain refunds and/or the return of their investments.

103.    On June 7, 2020, however, Plaintiff Jiamei Lu became concerned that the GTV Offering together with the Crowdfunding Scheme was an investment scam. She messaged Lafrenz and asked for a refund, but Lafrenz refused.

104.    Instead, Lafrenz offered a number of excuses, including that the investment in GTV would happen soon, that various banks had frozen the accounts, and that the issues would be resolved soon.

105.    On June 9, 2020, Defendant Guo posted another video on the GTV Platform in which he addressed the funds held in VOG. He claimed that VOG funds would be used to purchase shares that had been owned by Defendant Saraca.

106.    This statement again created the false impression that no funds from VOG had been transferred to GTV, a misrepresentation compounded by the fact that as of June 9, 2020, Plaintiffs had not received a receipt for their transfers to VOG and Lafrenz, nor had they received any GTV securities.

107.    The June 9, 2020 statement was also false in that Lafrenz and VOG had already transferred approximately $30 million to GTV and Saraca on May 15, 2020, as evidenced by Lafrenz's letters to the SEC and WhatsApp messages to Guo (*see supra*, ¶¶ 76, 99), and Plaintiffs had not received any GTV securities in return.

108.     In reliance on Guo's June 9, 2020 statements, Plaintiffs (other than Jiamei Lu) believed that their funds would be invested and that they would receive GTV securities and, as such, took no steps to seek a refund and return of their funds.

109.     On June 10, 2020, Lafrenz posted an announcement on Discord acknowledging that VOG received approximately $117 million. She promised that "you don't have to worry about it, the money won't fly away."

110.     Lafrenz failed to disclose, however, that at least $30 million had already been sent to Defendants GTV and Saraca.

111.     Defendant Lafrenz also refused to interact with Plaintiffs. Several Plaintiffs sent her messages on Discord, WhatsApp, or by email asking for the status of their investment and a copy of the promised receipt. Lafrenz did not respond.

112.     On June 20, 2020, Defendant Guo announced in a video on the GTV Platform that GTV had not received any of the funds Plaintiffs (and others) had transferred to VOG.  For the first time, and in contradiction to his statements on May 10 and 12 (*see supra*, ¶¶ 72, 78), he claimed that Lafrenz and VOG had "nothing to do with" himself or GTV, but promised that if VOG sent the money to GTV, VOG would receive GTV securities.

113.     The statement that GTV had received no funds from VOG was false (*see supra*, ¶ 99).

114.     On June 25, 2020, Defendant Lafrenz sent a message to Plaintiff Jiamei Lu and promised to issue a refund by July 1, but Jiamei Lu never received any refund. Thereafter, both Lafrenz and Guo blocked Jiamei Lu on WhatsApp.

115.     On June 26, 2020, Lafrenz was interviewed by Lude media, a platform controlled by Saraca; the video of the interview was subsequently posted on Twitter. In the interview, Lafrenz

admitted that she and VOG had Plaintiffs' funds (among others). According to a transcript of that video, Lafrenz claimed that Wells Fargo had frozen VOG's bank accounts, including $43 million of funds sent for investments in GTV. She later stated that VOG had "$117 [million] from thousands of investors."

116.    In the video, Lafrenz maintained the legitimacy of the Crowdfunding Scheme and the GTV Offering, asserting that Wells Fargo had frozen the accounts holding investors' money but that she was negotiating an agreement to have the funds released. She stated that the "[n]ext step is to send the money … to where it should go, to issue the certificates of share to the share holders [sic]."

117.    This statement was not true because Lafrenz had already sent GTV and Saraca $30 million on May 15, 2020 (*see supra*, ¶ 99) and because no Plaintiffs ever received "certificates of share" for GTV.

118.    In response to seeing this video, several of Plaintiffs became concerned and requested refunds from Lafrenz.

119.    Lafrenz assured Plaintiffs that she was working with the bank to release the funds and maintained that the investment would proceed.

120.    On July 3, 2020, Defendant Lafrenz published an announcement stating that the account issues with Wells Fargo had been resolved.

121.    In reliance on this statement, Plaintiffs believed that Lafrenz and VOG would proceed with the investment in GTV.

122.    In fact, as Lafrenz's letter and bank records sent to the SEC on August 7 and 14, 2020 indicate, Lafrenz sent another check for approximately $31.2 million to Saraca.

123.    On July 21, 2020, Lafrenz doubled down on her prior promise that the investment in GTV and issuance of shares was forthcoming, stating in a Discord message that "we are waiting for lawyer's document … Our volunteer workers are working to contact every one of you, and will send you the document as soon as we receive it."

124.    In fact, in that message, Lafrenz invited people to "add investment" in GTV.

125.    This was another misleading statement, as Lafrenz omitted to disclose at the time that the SEC had begun investigating the GTV Offering and her and VOG's role. Lafrenz admitted in a February 17, 2021 video posted to YouTube that she knew about the SEC's investigation as early as July 2021.

126.    Over the following months, the VOG "volunteer workers" undertook to confirm the amount of money each investor sent to VOG.

127.    In or around August 2020, the VOG volunteer workers contacted Plaintiffs and confirmed the amount of Plaintiffs' wire transfers to VOG and/or Lafrenz.

128.    As such, Defendants Lafrenz and VOG acknowledged that they were in possession of Plaintiffs' funds.

**The Convertible Bond Ruse, Refused Refunds, and Government Investigations**

129.    Not long after Defendants issued their August 2020 statements acknowledging the receipt of Plaintiffs' funds, promising that GTV shares would be issued, and stating that the investment would proceed, Defendants once again altered the arrangement.

130.    In late July and early August 2020, Defendant Guo began discussing "loan" projects involving entities called "farms" (explained below), which Guo controlled, and that would allow interested investors to enter into loan agreements that would pay back an investor's principal

amount plus 3% interest per annum as either cash or GTV shares (valued at $1 per share) after a three year period (hereinafter the "Convertible Bond Project").

131.    According to a published report by the network analysis firm Graphika, Guo controls an entity known as Himalaya Supervisory Authority, which oversees the Himalaya Farms Network. The Network is comprised of local chapters known as Himalaya Farms. A "farm" recruits supporters into local chapters to create content for GNews, GTV and other social media accounts. In addition, farm supporters attend events and local protests to promote Guo's agenda.

132.    Although VOG was not itself a "farm," Lafrenz claimed that VOG would have a similar status as a farm and would act as a borrower in the Convertible Bond Project.

133.    In a July 19, 2020, video posted on GTV, Guo described this as a "loan contract between you and me. This is convertible bond."

134.    Guo had also begun promoting a new venture called "G-Club" which would sell memberships to individuals and purportedly allow members to obtain shares in two other companies, G-Club and G-Fashion, which Defendant Guo offered as a substitute investment available to those who missed out on investing in GTV.  Guo first mentioned G-Club in his June 20, 2020 video posted to the GTV Platform.

135.    Almost immediately, Lafrenz began touting the Convertible Bond Project and G-Club in messages on Discord, which she sent, upon information and belief, to the same group of people from whom she solicited investments in GTV, including Plaintiffs.

136.    Lafrenz also sent documents to those people, including Plaintiffs, purporting to authorize the conversion of their GTV investments into a loan agreement that, in turn, could eventually be converted into GTV securities.

137. On August 3, 2020, Defendant Lafrenz posted a message on Discord advising anyone that was interested in participating in the Convertible Bond Project to send a message and she would coordinate the documentation.

138. At or about the same time, Defendants Guo, Lafrenz, and VOG took steps to move investors' funds, including, upon information and belief, Plaintiffs' funds, out of the United States to bank accounts in foreign jurisdictions.

139. According to bank records and a WhatsApp message from Defendant Guo that Defendant Lafrenz posted online on or around December 26, 2020, on August 28, 2020, at Guo's instruction, Lafrenz wired $6,000,000 from an account Lafrenz controlled to an account at First Abu Dhabi Bank in the name of ACA Capital Group Limited.

140. On August 31, 2020, Lafrenz posted another announcement on Discord advising that people who had sent funds to VOG for investment in GTV could use those funds to participate in the Convertible Bond Project or could convert those funds into a G-Club membership.

141. Several of Plaintiffs, including Linda Cheung, Weiguo Sun, Yan Gao, Ying Liu, RuQin Wang, Teli Chen, Weixiang Ge, and Shuang Wang, viewed Lafrenz's announcements and believed that the Convertible Bond Project was the only opportunity to salvage their investment in GTV.

142. Lafrenz assured Plaintiffs in messages sent on WhatsApp and Discord that by agreeing to participate in the Convertible Bond Project, it was "certain" they could convert the loans into GTV shares.

143. Plaintiffs Linda Cheung, Weiguo Sun, Mao-Fun Weng, RuQin Wang, Teli Chen, Wixiang Ge, Shuang Wang, and Ying Liu received and signed purported "loan agreements" that

identified VOG as the borrower. Plaintiff Yan Gao received and signed a purported "loan agreement" that identified "Maywind Trading" as the borrower.

144.    As a result, some of the funds Plaintiffs had previously sent to VOG to purchase GTV securities were made part of the Convertible Bond Project.

145.    Lafrenz also advised investors, including certain Plaintiffs, in early September 2020, that additional funds could be invested and that starting September 7, 2020, she would accept such funds for "Phoenix Farm," a Himalaya Farm authorized by Defendant Guo to collect funds as part of the Convertible Bond Project. Some of Plaintiffs invested additional funds with Phoenix Farm.

146.    Although Plaintiffs Linda Cheung, Weiguo Sun, Mao-Fun Weng, RuQin Wang, Teli Chen, Wixiang Ge, Shuang Wang, Yan Gao and Ying Liu sent signed copies of the loan agreements back to Lafrenz, neither she nor VOG, nor any other entity, ever returned a counter-signed agreement.

147.    At or around this same time, all the Plaintiffs continued to push Lafrenz to issue refunds of their investments.

148.    Lafrenz provided "refund" forms, which were posted on Discord, that required Plaintiffs to list detailed personally identifiable information.

149.    Plaintiffs returned these forms, sometimes several times, to Lafrenz, but she issued no refunds.

150.    As a result of the Convertible Bond Project, as well as Lafrenz's repeated promise to issue refunds, Plaintiffs continued to believe that their funds were going to be either invested into GTV or returned to them.

151.    On December 16, 2020, Lafrenz announced on Discord that Phoenix Farm was dissolving.

152.    A few days later, on December 26, 2020, Lafrenz announced on Discord that loans made to Phoenix Farm totaled nearly $90 million which, upon information and belief, included some of Plaintiffs' money, including additional investments.

153.    During the same announcement, Lafrenz stated that those funds were transferred to accounts identified by Guo, including the August 28, 2020 transfer from an account that Lafrenz controlled to the ACA Capital Group Limited account at First Abu Dhabi Bank.

154.    Lafrenz's statement, however, contradicted her prior statement that she would not begin collecting funds for Phoenix Farm until September 7, 2020 and, upon information and belief, that transfer in fact contained Plaintiffs' money.

155.    Upon information and belief, as a result of Lafrenz's statements, investor complaints and refund requests, and the ongoing SEC investigation into the GTV Offering, Defendants Guo and Lafrenz's relationship deteriorated.

156.    On January 26, 2021, Lafrenz posted a message on Discord claiming that "all of the funds received by VOG are accounted for," that only "one payment [was] sent to GTV and two payments [were] sent to Saraca." She went on to claim that VOG, Saraca, and GTV would issue refunds as soon as they were permitted to do so by the SEC, which was then investigating the GTV Offering and Defendant Guo.

157.    Lafrenz's statement on January 26, 2021 that all funds received by VOG were accounted for and only three payments were sent to GTV and Saraca, contradicts Lafrenz and Guo's earlier statements on June 20 and 26, 2020, that VOG funds had not been sent to GTV or Saraca.

158.     Defendant Guo, on January 28, 2021, issued a video statement in which he denied receipt of any funds from Lafrenz, VOG, or Phoenix Farm and denied that he had any affiliation with Lafrenz or Phoenix Farm.

159.     In a February 17, 2021 video posted to YouTube, Lafrenz admitted that she was aware of problems with the GTV Offering as early as "July [2020]" because "SEC started to investigate GTV private placement."   The following day, Lafrenz posted another video to YouTube in which she admitted she received an SEC subpoena "very early, it is in July."

160.     Despite knowing that the SEC was investigating the GTV Offering, Lafrenz issued numerous public statements encouraging investors, including Plaintiffs, to leave their funds in VOG, promising that they would receive GTV securities, and promising that their funds were safe (*see supra*, ¶¶ 120, 123-124).

161.     Lafrenz also published online two letters that she had sent to the SEC on behalf of VOG on August 7 and 14, 2020. Those letters reveal the falsity of Guo's and Lafrenz's representations in June and July 2020, that money collected by VOG had not been sent to GTV.

162.     Specifically, in an August 14, 2020 letter to the SEC, Lafrenz and VOG revealed that $15 million of investor money was sent to GTV on May 15, 2020, $15 million of investor money was sent to Saraca on May 15, 2020, and an additional $31.2 million of investor money was sent to Saraca on July 7, 2020.

163.     Finally, in several audio messages posted on Discord in early February 2021, Lafrenz instructed several Plaintiffs to send recall requests to Wells Fargo bank to recover funds from one of the accounts under her control to which they had sent money.  About a week after posting these messages, Lafrenz posted a copy of a bank statement without any date information,

purportedly indicating that Wells Fargo bank recently returned approximately $700,000 to investors and thereafter closed the account.

164.    This representation proved to be another false and misleading statement by Lafrenz regarding the return of investors' funds.

165.    Plaintiffs contacted Wells Fargo to obtain refunds as Lafrenz suggested but were informed that the account had been closed in or around July 2020.

166.    A copy of the bank statement that Lafrenz showed Plaintiffs in February 2021 was subsequently posted on the GTV website. That copy included dates for each transaction, all of which were dated in July 2020.

167.    Plaintiffs have continued to request refunds from Lafrenz and VOG. To date, Lafrenz and VOG have not refunded any money to Plaintiffs.

168.    Despite VOG having transferred to Defendants GTV and Saraca nearly $61.2 million of investor funds which, upon information and belief, include Plaintiffs' funds, Defendants have failed to deliver the promised GTV securities to Plaintiffs.

### The GTV Offering Did Not Comply With Federal Securities Laws

169.    The GTV Offering was described as a private placement.

170.    Typically, private placement issuers file Form D with the SEC and claim that their offering is exempt from registration because it complies with the safe harbor restrictions in 17 C.F.R. § 230.506 ("Rule 506").

171.    The GTV Offering, upon information and belief, did not comply with Rule 506's safe harbor and Defendants knowingly offered and sold, or were willfully blind to the fact that they offered and sold, the GTV securities that were neither registered with the SEC or exempt from registration in violation of Section 5 of the Securities Act.

172.    Defendants knowingly offered and sold, or were willfully blind to the fact that they offered and sold, the securities in the GTV Offering through a general solicitation and, furthermore, used general advertising to solicit investors and conduct the sale. The Rule 506(b) safe harbor, which prohibits general solicitations, therefore, did not apply.

173.    Defendants took no steps to ensure that sales were limited to accredited investors. In fact, Defendants said nothing to Plaintiffs regarding whether they needed to be accredited investors to participate in the GTV Offering, requested no information from Plaintiffs regarding their financial status, and took no steps to ascertain whether Plaintiffs were accredited investors. Therefore, the Rule 506(c) safe harbor, which requires the issuer to take "reasonable steps to verify" the accredited investor status, did not apply.

## COUNT I

### Violation of Section 5 and 12(a)(1) of the Securities Act of 1933
### (All Plaintiffs Against All Defendants)

174.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-173 of this Complaint as if fully set forth herein.

175.    Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1), defines the term "security" as including any "stock" or "evidence of indebtedness" or "investment contract."

176.    The interests in GTV marketed by Defendants are securities within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1).

177.    Section 5(a) of the Securities Act, 15 U.S.C. § 77e(a), provides:

Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly –

(1)     to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(2)     to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

178.    Section 5(c) of the Securities Act, 15 U.S.C. § 77e(c), provides:

It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use of medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 8.

179.    No registration statement was filed or in effect under the Securities Act regarding the GTV securities offered to Plaintiffs by Defendants, and no exemption from registration existed regarding those securities.

180.    When Defendants solicited Plaintiffs to invest in GTV, and provided investment information and documents to make an investment in GTV to Plaintiffs, Defendants directly and indirectly:

(a)     made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

(b)     carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or for delivery after sale; and/or

(c)     made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy securities, through the use or medium of a prospectus or otherwise,

without a registration statement having been filed or being in effect as to such securities.

181.    By reason of the foregoing, Defendants violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a), (c).

182.    Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77l(a)(1), provides:

Any person who –

(1)     offers or sells a security in violation of section 5 of this title,
…

shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

## COUNT II

**Violation of Sections 5 and 15 of the Securities Act of 1933**
**(All Plaintiffs Against Defendant Guo)**

183.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-173 of this Complaint as if fully set forth herein.

184.    Section 15(a) of the Securities Act, 15 U.S.C. § 77o, provides:

(a) Controlling persons –

Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under section 11 or 12, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist

185.    Defendant Guo controlled Defendants Saraca and GTV within the meaning of Section 15(a).

186.    Defendant Guo is jointly and severally liable with and to the same extent as Defendants GTV and Saraca for their violations of Sections 5(a) and 5(c) of the Securities Act.

## COUNT III

**Securities Fraud in Violation of Section 10(b)
of the Securities Exchange Act of 1934 and Rule 10b-5 Thereunder
(All Plaintiffs Against All Defendants)**

187.   Plaintiffs hereby incorporate by reference the allegations contained in paragraphs

1-173 of this Complaint as if fully set forth herein.

188.   Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), provides:

> It shall be unlawful for any person, directly or indirectly, by the use
> of any means or instrumentality of interstate commerce or of the
> mails …,
>
> (b)      to use or employ, in connection with the purchase or sale of
> any security registered on a national securities exchange or any
> security not so registered … any manipulative or deceptive device
> or contrivance in contravention of such rules and regulations as the
> [SEC] may prescribe as necessary or appropriate in the public
> interest or for the protection of investors.

189.   Rule 10b-5, 17 C.F.R. 2450.10b-5, provides:

> It shall be unlawful for any person, directly or indirectly, by the use
> of any means or instrumentality of interstate commerce, or of the
> mails …,
>
> (a)      to employ any device, scheme, or artifice to defraud,
>
> (b)      to make any untrue statement of a material fact or to omit to
> state a material fact necessary in order to make the statements made,
> in the light of the circumstances under which they were made, no
> misleading, or
>
> (c)      to engage in any act, practice, or course of business which
> operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

190.   Defendants each and together made material misstatements and/or omissions about

the GTV Offering and GTV's business in connection with the sales of GTV securities, as set forth

above.

191.    Defendants' material misstatements and/or omissions were made with knowledge of their falsity or misleading character and with an intent to deceive, manipulate, and defraud Plaintiffs into purchasing GTV securities.

192.    Defendants' material misstatements and/or omissions include:

a.  False or misleading statements that investor funds transferred to VOG would be used to purchase GTV securities on investors' behalf;

b.  False or misleading statements concerning the value of GTV;

c.  False or misleading statements concerning the GTV app;

d.  False or misleading statements concerning the relative risk of the GTV Offering;

e.  False or misleading statements concerning how the GTV Offering was structured, including when it would close;

f.  False or misleading statements concerning how Plaintiffs' funds would be used if invested; and

g.  False or misleading statements concerning the relationships between or among Defendants Saraca and GTV, Sararca and Guo, Guo and GTV, Lafrenz and GTV, and VOG and GTV.

193.    Defendants each had both motive and opportunity to commit fraud, including to obtain financial gain, and there is strong circumstantial evidence of conscious misbehavior and/or recklessness.

194.    Defendants made the foregoing misstatements and/or omissions in order to induce Plaintiffs to transfer funds in order to purchase GTV securities.

195.    Plaintiffs reasonably relied on Defendants' misstatements and/or omissions and did in fact transfer funds in reliance on those misstatements and/or omissions.

196.    Plaintiffs suffered economic loss in the form of their entire investments in the purchase of GTV securities as a result of Defendants' misstatements and/or omissions.

197.    Defendants are jointly and severally liable for damages to each Plaintiff.

## COUNT IV

### Common Law Fraud
### (All Plaintiffs Against All Defendants)

198.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-173 of this Complaint as if fully set forth herein.

199.    Defendants each and together made material misstatements and/or omissions about the GTV Offering and GTV's business in connection with the sales of GTV securities, as set forth above.

200.    Defendants' material misstatements and/or omissions were made with knowledge of their falsity or misleading character and with an intent to deceive, manipulate, and defraud Plaintiffs into purchasing GTV securities.

201.    Defendants' material misstatements and/or omissions include:

a.  False or misleading statements concerning the value of GTV;

b.  False or misleading statements concerning the GTV app;

c.  False or misleading statements concerning the relative risk of the GTV Offering;

d.  False or misleading statements concerning how the GTV Offering was structured, including when it would close;

e.  False or misleading statements concerning how Plaintiffs' funds would be used if invested; and

      f.   False or misleading statements concerning the relationships between or among Defendants Saraca and GTV, Sararca and Guo, Guo and GTV, Lafrenz and GTV, and VOG and GTV.

202.    Plaintiffs reasonably relied on these misstatements and/or omissions and transferred funds to Defendants Lafrenz and VOG, a portion of which Lafrenz and VOG then transferred to Defendants GTV and Saraca at the instruction of Defendant Guo.

203.    Had Plaintiffs known the truth, they would not have transferred funds to invest in GTV securities.

204.    After Plaintiffs transferred their funds, Defendants made a series of additional material misstatements and/or omissions, which they knew to be false and/or misleading when made, which were intended to dissuade Plaintiffs from seeking refunds or taking other action to recoup their investments, including:

      a.   Falsely stating that funds collected by VOG had not yet been paid to GTV;

      b.   Failing to disclose an SEC investigation into the GTV Offering; and

      c.   Failing to disclose that the GTV Offering did not comply with federal securities laws.

205.    As a result of these misstatements and/or omissions, and in reliance thereon, Plaintiffs refrained from taking any action to recover the funds transferred.

206.    As a result of Defendants' misstatements and/or omissions, Plaintiffs have been injured in the loss of their entire investments in the purchase of GTV securities.

## COUNT V

### Unjust Enrichment
### (All Plaintiffs Against All Defendants)

207.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-173 of this Complaint as if fully set forth herein.

208.    Plaintiffs each conferred a benefit on Defendants when they wired funds to Lafrenz and/or VOG as "agents" designated by Guo and GTV to pool funds for investment in GTV securities, and Lafrenz and VOG thereafter transferred a portion of Plaintiffs' funds to GTV and Saraca.

209.    Plaintiffs transferred funds based on Defendants' material misstatements and/or omissions, as well as the promise to provide Plaintiffs with GTV securities.

210.    Defendants never provided Plaintiffs with GTV securities, although Defendants received the funds voluntarily and never returned the funds to Plaintiffs.

211.    Defendants have retained the money transferred by Plaintiffs and have engaged in a pattern of false, misleading and deceptive conduct designed to prevent Plaintiffs from recovering their funds.

212.    It would be against equity and good conscience to permit Defendants to continue to retain that money at Plaintiffs' expense.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

213.    That Defendants offered and sold unregistered securities in violation of the Securities Act of 1933.

214.    That Defendants are jointly and severally liable for rescission and/or damages, including punitive damages, as to each Plaintiff in amounts to be proven at trial.

215.    The Defendants are jointly and severally liable for damages, including punitive damages, to Plaintiff Jia Li Wang in the amount of $430,000.00, together with interest thereon as authorized by law.

216.    The Defendants are jointly and severally liable for damages, including punitive damages, to Plaintiff Jiamei Lu in the amount of $40,000.00, together with interest thereon as authorized by law.

217.    The Defendants are jointly and severally liable for damages, including punitive damages, to Plaintiff Jun Liu in the amount of $35,000.00, together with interest thereon as authorized by law.

218.    The Defendants are jointly and severally liable for damages, including punitive damages, to Plaintiff Linda Cheung in the amount of $50,030.00, together with interest thereon as authorized by law.

219.    The Defendants are jointly and severally liable for damages, including punitive damages, to Plaintiff Mao-Fu Weng in the amount of $45,000.00, together with interest thereon as authorized by law.

220.    The Defendants are jointly and severally liable for damages, including punitive damages, to Plaintiff RuQin Wang in the amount of $89,980.00, together with interest thereon as authorized by law.

221.    The Defendants are jointly and severally liable for damages, including punitive damages, to Plaintiff Teli Chen in the amount of $125,000.00, together with interest thereon as authorized by law.

222.    The Defendants are jointly and severally liable for damages, including punitive damages, to Plaintiff Weiguo Sun in the amount of $59,200.00, together with interest thereon as authorized by law.

223.    The Defendants are jointly and severally liable for damages, including punitive damages, to Plaintiff Weixiang Ge in the amount of $4,500.00, together with interest thereon as authorized by law.

224.    The Defendants are jointly and severally liable for damages, including punitive damages, to Plaintiff Xingyu Yan in the amount of $100,000.00, together with interest thereon as authorized by law.

225.    The Defendants are jointly and severally liable for damages, including punitive damages, to Plaintiff Yan Gao in the amount of $66,000.00, together with interest thereon as authorized by law.

226.    The Defendants are jointly and severally liable for damages, including punitive damages, to Plaintiff Yi Li in the amount of $45,000.00, together with interest thereon as authorized by law.

227.    The Defendants are jointly and severally liable for damages, including punitive damages, to Plaintiff Ying Liu in the amount of $20,000.00, together with interest thereon as authorized by law.

228.    The Defendants are jointly and severally liable for damages, including punitive damages, to Plaintiff Shuang Wang in the amount of $25,500.00, together with interest thereon as authorized by law.

229.    Awarding Plaintiffs their attorneys' fees and costs.

230.    Any other and further relief as this Court deems just and proper.

Dated: New York, New York          **THOMPSON HINE LLP**
      May 19, 2021

                           By: /s/Brian P. Lanciault, Jr.
                              Brian P. Lanciault, Jr.
                              Mendy Piekarski
                              335 Madison Avenue, 12th Floor
                              New York, NY 10017
                              Telephone:  212.344.5680
                              Facsimile:  212.344.6101
                              Mendy.Piekarski@thompsonhine.com
                              Brian.Lanciault@thompsonhine.com

                              Steven A. Block (*pro hac vice* pending)
                              20 N. Clark St., Suite 3200
                              Chicago, IL 60602
                              Telephone:  312.998.4240
                              Facsimile:  312.998.4245
                              Steven.Block@thompsonhine.com

                              *Attorneys for Plaintiffs*